UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

ROBERT R.,                              )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       Case No. 1:17-cv-1140-CCR
                                        )
ANDREW SAUL,                            )
Commissioner of Social Security,        )
                                        )
                Defendant.              )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DENYING THE COMMISSIONER'S MOTION FOR
JUDGMENT ON THE PLEADINGS**
(Docs. 9 & 11)

Plaintiff Robert Reynolds is a claimant for Disability Insurance Benefits ("DIB")
under the Social Security Act ("SSA"). Pursuant to 42 U.S.C. § 405(g), he moves for
judgment on the pleadings to reverse the decision of the Social Security Commissioner
that he is not disabled. The Commissioner has moved for judgment on the pleadings
asking the court to affirm. On July 16, 2018, the court took the pending motions under
advisement.

After Plaintiff's DIB application was denied by the Social Security
Administration, Administrative Law Judge ("ALJ") Stephen Cordovani found Plaintiff
ineligible for benefits on the ground that he was not disabled at any time after his alleged
onset date of July 25, 2013. The Social Security Administration's Office of Disability
Adjudication and Review Appeals Council (the "Appeals Council") denied Plaintiff's
request for review, making the ALJ's decision the final determination of the
Commissioner. Plaintiff appeals that decision.

Plaintiff identifies five errors in the disability determination: (1) the ALJ
improperly evaluated the opinion of his treating surgeon, Kenneth Eckhert, M.D.; (2) the
ALJ's credibility analysis is flawed; (3) the ALJ's Residual Functional Capacity ("RFC")

determination is not supported by substantial evidence; (4) the Appeals Council erroneously failed to consider additional evidence from Plaintiff's treating physician; and (5) new and material evidence submitted to this court supports a remand.

Plaintiff is represented by Christopher Pashler, Esq. The Commissioner is represented by Special Assistant United States Attorneys Laura Ridgell Boltz and Sergei Aden.

## I. Procedural History.

On February 28, 2014, Plaintiff filed his DIB application. His application was denied, and he timely requested a hearing before an ALJ. On June 27, 2016, ALJ Cordovani conducted a hearing at which Plaintiff was represented by counsel and testified. Vocational Expert ("VE") Toni McFarland also testified. On July 20, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. Plaintiff appealed that determination and sought to supplement the record with new evidence from his treating physician. On September 29, 2017, the Appeals Council denied Plaintiff's review and declined to supplement the record. Plaintiff renews his motion to supplement the evidence before this court.

## II. Factual Background.

Plaintiff was born on September 9, 1967 and was forty-five years old as of his alleged disability onset date. He was forty-eight years old on the date of the ALJ's decision, making him a "younger person" as defined by the Social Security Administration. He has a high school education and previously worked as an auto mechanic, earning at least $30,000 a year between 1998 and 2011.

### A. Plaintiff's Medical History.

Plaintiff alleges disability since July 25, 2013 because of multiple hernia surgeries, back pain, arthritis, and depression. In 2003, Plaintiff had an umbilical hernia repair surgery with mesh.[1] On December 2, 2011, he presented for treatment at Buffalo Mercy Hospital's emergency room ("ER") with complaints of sudden onset of pain, nausea, and

---

[1] Plaintiff has since had five additional hernia repair surgeries, December 8, 2011; April 12, 2012; October 30, 2012; July 25, 2013; and November 12, 2013.

diarrhea. Diagnostic imaging performed of his abdomen on December 4, 2011 showed early or partial small bowel obstruction and right pleural effusion. Diagnostic imaging of his abdomen was performed on December 6, 2011, which showed prominent gastric folds consistent with gastritis as well as a partial small bowel obstruction. On December 8, 2011, Rurik Johnson, M.D. performed an exploratory laparotomy with lysis of adhesions. Dr. Johnson opined that Plaintiff was unable to work from December 4, 2011 until January 15, 2012. A CT scan of Plaintiff's abdomen and pelvis performed on December 19, 2011 revealed a small abscess or postoperative fluid collection in the periumbilical region.

At a January 10, 2012 follow-up appointment, Dr. Johnson released Plaintiff for work the week of January 16, 2012. Plaintiff returned to his employment as an auto mechanic on January 23, 2012. That same day, Plaintiff reported yellow drainage and tissue coming from an open abdominal wound, noting that he was able to push the tissue into place without issue. Plaintiff was examined by Daniel A. Leary, M.D., who recorded that the protruding tissue did not appear to involve bowel. Plaintiff's wound was cauterized with a silver nitrate stick, and triple antibiotic ointment and a dry sterile dressing were applied. Plaintiff was prescribed antibiotics and told to continue with his normal daily activities, with the exception of no lifting of any weight greater than thirty pounds.

Plaintiff saw Dr. Johnson on March 22, 2012, for another procedure to address the recurrent drainage from his abdominal wound. A week later, the wound was reported to be healing well. Several weeks later, at an appointment with Dr. Johnson, Plaintiff had a new chest wall mass and an infected abdominal wall mesh with an abscess. Dr. Johnson removed the infected mesh and performed an exploratory laparotomy and small bowel resection with primary anastomosis. Surgical pathology revealed a right chest wall cyst, fragments of fibroconnective tissue consistent with abscess formation and mesh, segment of small bowel showing edema, mesentery showing fat necrosis, and mesh with fibroconnective and adipose tissue with acute and chronic inflammation.

Approximately two weeks later, Dr. Johnson re-evaluated Plaintiff who reported he was "feeling well" and that he wanted to return to work the next week without any lifting. (AR 596.) Plaintiff's pain was noted to be well-controlled, but he had mild wound drainage. Dr. Johnson prescribed antibiotics and recommended a two-week follow-up appointment.

Plaintiff reported discomfort as a result of the recurrent hernia at an August 29, 2012 appointment with Dr. Eckhert. Dr. Eckhert described the hernia as "complicated" and indicated he wanted L. Rajendran, M.D. to consult as well. (AR 369.) Dr. Eckhert ordered a CT scan, which revealed "progressive diastases of the rectus musculature and increase of ventral hernia." (AR 367.)

Two months later, Plaintiff was admitted to Buffalo Mercy Hospital, at which time Dr. Rajendran performed a ventral hernia repair with assistance from Dr. Eckhert. Plaintiff was discharged on November 6, 2012 and at that time, Plaintiff was tolerating a regular diet and was in no acute distress. He was approved to resume activity such as climbing stairs and ambulating. Plaintiff was instructed to avoid heavy lifting and pushing or pulling greater than fifteen pounds for approximately four to six weeks.

During a January 7, 2013 follow-up appointment, Plaintiff was noted to be recovering well. Dr. Eckhert opined that Plaintiff should not work until at least February due to discomfort, which Dr. Eckhert noted was "not unheard of for having a recurrent open ventral hernia repair." (AR 432.) On January 25, 2013, Dr. Eckhert stated Plaintiff could return to work on January 28, 2013 without restrictions. Thereafter, Shashi Lall, M.D. noted on March 1, 2013, that Plaintiff was recovering from ventral hernia repair surgery and wearing an abdominal brace. Plaintiff reported he experienced pain in his abdomen when he walked or ate. He also reported recently returning to work as a mechanic.

On June 24, 2013, Dr. Eckert evaluated Plaintiff for another possible abdominal wall hernia. Although Plaintiff noted no complaints, he reported "a little bit of separation in his upper abdomen." (AR 380.) A CT scan of his abdomen and pelvis showed linear densities in the subcutaneous fat and small knuckle of recurrent fat filled hernia along the

craniad aspect of the repair material. His abdomen was more distended on July 2, 2013, and Dr. Eckhert recorded a small recurrence of Plaintiff's hernia at the upper abdomen. They discussed possible surgical intervention including complications and possible recurrence.

Dr. Eckhert performed a laparoscopic ventral hernia repair on July 25, 2013, and also repaired a non-recurrent inguinal hernia. Plaintiff was discharged four days later and instructed to avoid heavy lifting, but advised that he could resume activities such as climbing stairs and walking. During an August 14, 2013 follow-up appointment, Dr. Eckhert opined that Plaintiff was "progressing as expected." (AR 389.) Plaintiff was advised to continue with his current activity level.

A month later, Dr. Eckhert noted that Plaintiff was doing well and that there were no signs of hernia recurrence. Plaintiff complained that he was still having pain following heavy lifting. Dr. Eckhert opined that this pain was likely musculoskeletal but referred Plaintiff for a CT scan to check for possible issues with the mesh in his abdomen. The CT scan revealed a recurrent ventral hernia above Plaintiff's pubic bone.

During an October 14, 2013 physical examination of Plaintiff, Dr. Eckhert detected a recurrent hernia but nonetheless opined that the mesh repair was otherwise intact. Dr. Eckhert reflected this finding in a New York State Disability evaluation for Plaintiff, opining "[Plaintiff] is not [r]ecovered from surgery yet. He still experience[s] pain and I am still treating him for this. I do not feel comfortable [r]eleasing him back to work yet." (AR 360.) On November 12, 2013, Dr. Eckhert performed another surgical repair of Plaintiff's recurrent hernia.

On December 16, 2013, Plaintiff presented to Dr. Eckhert with concerns about a lump in his lower right abdomen, but pursuant to a physical examination, Dr. Eckhert opined that the lump was a seroma.[2] Plaintiff treated with Dr. Eckhert again on January 6, 2014, for abdominal pain, but Dr. Eckhert concluded that any pain was not a

---

[2] A seroma is a "mass or tumefaction caused by the localized accumulation of serum within a tissue or organ." Stedman's Medical Dictionary (2014) *available at* Westlaw STEDMANS 812050.

recurrence of Plaintiff's hernia but was instead attributable to Plaintiff's surgical history and diet.

Three months later, at an evaluation with Dr. Lall, Plaintiff reported he was "[n]ot bothered by [his] hernia," that he was "[f]eeling generally well[,]" (AR 722) and requested a refill of his heartburn medication. Dr. Lall nonetheless recorded that Plaintiff had an anxious affect "due to continuous chronic abdominal pain and discomfort." *Id.*

In an April 30, 2014 letter authored in connection with Plaintiff's disability application, Dr. Eckhert stated that Plaintiff had undergone at least five ventral hernia repairs which disrupted his abdominal wall and caused chronic discomfort. He opined that Plaintiff was unable to engage in heavy lifting and strenuous activity and could therefore not perform his job as an auto mechanic.

After four days of nausea, vomiting, diarrhea, and abdominal bloating, Plaintiff presented for treatment at the Kenmore Mercy ER on May 18, 2014. A CT scan taken at the time indicated thickening of the ileum and colon. Dr. Eckhert noted Plaintiff had colitis and enteritis, with no obvious surgical issues. Plaintiff remained hospitalized until May 20, 2014 for acute diverticulitis.

On July 9, 2014, Plaintiff treated with Dr. Lall and reported ongoing low-degree abdominal cramps. Dr. Lall noted Plaintiff had lost sixteen pounds from not eating well. A physical examination revealed Plaintiff's abdomen was soft and minimally tender. Dr. Lall refilled Plaintiff's medications, ordered laboratory testing, and advised Plaintiff to follow up in three months.

At Plaintiff's follow-up appointment with Dr. Lall on December 5, 2014, no significant changes were noted. Plaintiff continued to have a low level of abdominal cramping for which he was taking medication as needed. Dr. Lall's physical examination of Plaintiff yielded normal results except that his abdomen was again soft and minimally tender. Plaintiff also reported ongoing issues with heartburn.

Plaintiff treated with Dr. Lall again in April 2015, at which time he reported ongoing mild abdominal pain with cramping and occasional heartburn. Dr. Lall noted

Plaintiff's abdomen was soft and there was mild tenderness in the upper part of his surgical scar.

Five months later, Dr. Lall evaluated Plaintiff who reported that he was feeling "generally better," but had "intermittent[] abdominal pain and cramps," and occasional heartburn. (AR 731.) Dr. Lall performed a physical examination which revealed that Plaintiff's abdomen was soft and tender, with mild tenderness again noted in the upper part of his surgical scar.

At his January 2016 annual examination with Dr. Lall, Plaintiff continued to report occasional minor abdominal cramping for which he took over-the-counter medication as needed. Dr. Lall recorded that Plaintiff continued to have a soft and minimally tender abdomen with mild tenderness in the upper part of his surgical scar.

Plaintiff attended an appointment with Dr. Eckhert on March 2, 2016, after Plaintiff noticed significant abdominal bloating. Plaintiff stated he felt as though there was a hernia on his right side which sometimes popped out and was painful. Dr. Eckhert was unable to determine whether there was a recurrent hernia and prescribed an abdominal brace in an effort to address Plaintiff's discomfort. Dr. Eckhert also ordered a CT scan to evaluate the hernia repairs.

Plaintiff returned to Dr. Eckhert in April 2016 with abdominal pain, chills, and concerns than he had another ventral hernia. Dr. Eckhert's physical examination revealed Plaintiff had a ventral hernia with large diastasis of his abdominal wall. Dr. Eckhert and Plaintiff discussed an open retrorectus repair to strengthen Plaintiff's abdominal wall, and Plaintiff was referred to a gastroenterologist for evaluation of his abdominal discomfort.

On May 4, 2016, Dr. Eckhert completed a treating physician functional capacity assessment form covering the period between July 24, 2013 to the date of the assessment wherein he opined that Plaintiff could not lift any weight, could stand and/or walk less than two hours per day, and could sit for two hours a day. He further opined Plaintiff could not engage in pushing or pulling and would need to lie down approximately four hours in an eight-hour workday as a result of discomfort.

Pursuant to Dr. Eckhert's referral, on June 1, 2016, Plaintiff was evaluated by Albert Diaz-Ordaz, M.D., a gastroenterologist, for intermittent abdominal pain that interfered with Plaintiff's activities of daily living. An examination revealed Plaintiff had a moderate visible hernia while lying down. His abdomen was soft, nontender, and non-distended, and he had positive bowel sounds in all quadrants. Dr. Diaz-Ordaz diagnosed periumbilical pain and recommended medications and dietary adjustments. He also ordered a lactulose breath test, the results of which were consistent with small intestinal bacterial overgrowth. Dr. Diaz-Ordaz prescribed a two-week course of antibiotics. Further testing showed findings consistent with gastroesophageal reflux and chronic inflammation, but no evidence of Helicobacter pylori infection, dysplasia, or metaplasia.

### B.    Plaintiff's Function Report.

On October 7, 2013, Plaintiff completed a function report in connection with his DIB application. With regard to his daily activities, he reported his wife helped him dress, he took walks in his yard, and he napped frequently, sleeping at least six hours out of every ten hours. Plaintiff stated he could no longer lift, bend, stoop, eat without pain, or work on vehicles because of his condition. He reported his condition affected his sleep and that his stomach was constantly bloated from scar tissue.

Plaintiff reported that he shaved his head because he could no longer shampoo his hair and he needed a hold bar to lower himself onto the toilet. Plaintiff's wife or sister-in-law prepared his meals because he could not bend to reach food in the cabinets or freezer. Somewhat inconsistently, he noted he prepared meals on a weekly basis. He performed no household chores, but shopped twice a month using an electric shopping cart.

With regard to his social activities, Plaintiff stated that because he could not walk for extended distances, eat without discomfort, and was in constant pain, his social activities were negatively impacted. Plaintiff further claimed he could not lift more than five pounds and could only stand for twenty minutes at a time. He could walk a quarter of a mile before he would have to stop from pain and could sit for approximately one

hour. He reported that he used an abdominal brace during the day but did not wear it while he was sleeping.

Plaintiff indicated he experienced pain twenty-four hours a day unless he took his pain medication consisting of seven and a half milligrams of hydrocodone every four hours which afforded him approximately two hours of relief.

### C. Consulting Assessments.

On November 5, 2013, John Schwab, D.O. examined Plaintiff at the request of the Division of Disability Determinations. Plaintiff was able to walk on his heels but not on his toes. He could only squat a third of the way down because of abdominal pain. Dr. Schwab noted that Plaintiff's abdomen revealed surgical scars and was distended and grossly tender with an eight-inch vertical and six-inch transverse ventral hernia. Dr. Schwab opined that Plaintiff had a marked restriction for bending, lifting, and carrying, and should avoid strenuous activity.

On the same day, Gregory Fabiano, Ph.D. examined Plaintiff, also at the request of the Division of Disability Determinations. Dr. Fabiano recorded that Plaintiff was cooperative, had coherent thought processes, normal affect, and his "[m]anner of relating, social skills, and overall presentation was adequate." (AR 397.) Dr. Fabiano noted that Plaintiff's attention and concentration and recent and remote memory skills were impaired. He further noted that Plaintiff's cognitive function was below average to average.

### D. Testimony at the ALJ Hearing.

At the June 27, 2016 hearing before the ALJ, Plaintiff testified that he had bloating and constant pain in his lower abdomen that radiated into his legs and which corresponded with exertion, as well as increased while sitting and standing. Plaintiff described his abdominal pain as constant and his leg pain as intermittent. He reported wearing an abdominal brace "here and there" until his July 2013 surgery. (AR 70.) Thereafter, he wore it all day to keep his four hernias from bulging out. He testified that he experienced significant pain when he had to go to the bathroom and had a poor appetite.

Plaintiff returned to light-duty work following his first surgery, which consisted of a mix of office work, servicing brakes, and performing oil changes. He testified that he could no longer engage in that kind of work due to difficulty with bending, lifting, standing, and sitting. He stated he had been unable to return to work following his fourth surgery in July 2013 because of abdominal pain and bloating. With respect to his medications, Plaintiff testified he took paroxetine for depression (which caused him fatigue), and Aleve for his abdominal pain because narcotic medication caused him gastrointestinal issues.

Plaintiff testified that he napped daily for approximately three hours per day and had to lie flat in a recliner or on the couch up to four times every eight hours as a result of his abdominal discomfort. Plaintiff stated he could sit for five to fifteen minutes at a time, stand for five to twenty minutes at a time, and walk a block at a time. He could not lift, bend, squat, or stoop. He stated he vomited from pain once or twice a week.

Plaintiff reported that his sister-in-law did all of his household chores and his wife had to help him dress. He also reported issues with losing sensation in his hands but indicated he had not yet been treated for this condition.

Plaintiff noted that he traveled by airplane to Florida with his wife in March of 2016 for a week which he spent resting in the sun. In terms of his ability to prepare food, Plaintiff testified that his sister-in-law brought him food up to five times a week and that he was limited to making sandwiches or microwavable food. Plaintiff was unable to do laundry or take out the garbage. He testified that he drove once or twice a week to pick up medication or personal hygiene products but did not drive himself to medical appointments and limited himself to driving approximately five miles. To obtain things he needed, he stated he usually called his sister-in-law because neither he nor his wife was capable of lifting. He reported having a small dog and accompanying his wife to the store approximately every other month. He said he also went to the store with his sister-in-law "[m]aybe about once a month." (AR 95.) His primary care physician had recommended he attend mental health counseling.

Following Plaintiff's testimony, VE McFarland testified that Plaintiff's past employment consisted of work as an auto mechanic, performed at a medium exertional level. The ALJ asked the VE to consider a hypothetical individual limited to sedentary exertional activities; occasional stooping; no crouching, crawling, or squatting; no ladders, ropes, or scaffolds; and no work at unprotected heights, which would preclude past work. The VE responded there would be three positions available: document preparer, telephone quotation clerk, and final assembler. The VE further testified that an individual requiring an additional two bathroom breaks per day of four to six minutes would erode but not eliminate the ability to perform the identified jobs.

The ALJ then asked the VE to consider a second hypothetical individual with the following limitations: sedentary postural requirements; no lifting, carrying, pushing, or pulling of any weight; standing and walking limited to less than two hours per day; and sitting limited to less than two hours per day. The VE testified those limitations would preclude employment.

### E.    Evidence Submitted to the Appeals Council.

Evidence submitted to the Appeals Council included records from Dr. Eckhert and Dr. Lall dated December 19, 2011, through July 28, 2016. The records include duplicates of several treatment notes contained in the record before the ALJ, prescription information, imaging studies related to Plaintiff's hernia surgeries, and laboratory results. There is also an upper GI endoscopy report dated July 16, 2014, which was referenced by Dr. Diaz-Ordaz, as well as a letter dated July 28, 2016, in which Dr. Lall stated she had been treating Plaintiff for acid reflux since 2012 and for hypertension since 2013.

### F.    Evidence Submitted to the Court.

On appeal to this court, Plaintiff attached a February 24, 2014 letter from Dr. Eckhert to Dr. Lall, detailing an office visit, and a treatment note from Dr. Eckhert dated August 16, 2016. On appeal, he requests consideration of this evidence and a remand to the ALJ directing the new evidence to be considered.

Pursuant to 42 U.S.C. § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is

new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" In applying this provision, the Second Circuit has developed a three-part test, allowing supplementation of the record where evidence is: (1) "'new' and not merely cumulative of what is already in the record"; (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative"; and (3) where there is "good cause for [Plaintiff's] failure to present the evidence earlier." *Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991) (citations omitted).

The Second Circuit has explained that "[t]he concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Id.* "'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Id.* at 44; *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Because the new evidence submitted by [claimant] did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ.").

With regard to the February 22, 2014 letter, it does not qualify as "new" evidence because it predates the Plaintiff's February 28, 2014 DIB application; the June 27, 2016 ALJ hearing; and the ALJ's July 20, 2016 decision. Plaintiff asserts that his first attorney's withdrawal and his initial *pro se* status on appeal demonstrates good cause for why this letter was not previously included in the record. Plaintiff, however, had the opportunity to submit this letter with his initial application and was represented during the ALJ's hearing. Because no good cause exists to excuse Plaintiff's failure to include this letter in the record before the ALJ, the court does not consider this letter on appeal.

The August 16, 2016 treatment note constitutes "new" evidence, as the visit occurred after the ALJ issued his decision, and it is not cumulative of evidence in the record because it addresses Dr. Eckhert's updated conclusions that Plaintiff's "abdominal

wall distention and laxity is secondary to the multiple hernia operations" and that "[t]here [are] no more surgical options for this." (Doc. 9-2 at 4.)

With regard to materiality, Dr. Eckhert's opinion is relevant to the time period of alleged disability because he opined that Plaintiff's abdominal pain was caused by his five surgeries and appears to be a condition for which he sought treatment in April 2016. *See Pollard*, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [claimant's] condition."). At that time, Dr. Eckhert referred Plaintiff for a CT scan to determine whether his hernia had recurred or if another issue was causing his pain.

Dr. Eckhert's August 2016 conclusion regarding the availability of additional surgical repairs is material because it directly contradicts the ALJ's conclusion that Dr. Eckhert's May 4, 2016 opinion was "only of [Plaintiff's] current status with discovery of additional hernias and is not reflective of any long range disability moving forward as further treatment may ameliorate his symptoms[.]" (AR 47.)

After the ALJ's decision was issued, Plaintiff's attorney withdrew, and he initially represented himself before the Appeals Council. Plaintiff requested an appeal of the ALJ's decision and noted he was "not quite sure what Judge Cordovani had for medical records[.]" (Doc. 9-1 at 20.) While his appeal was pending, Plaintiff obtained new counsel and he asserts that the Appeals Council failed to timely respond to the new counsel's request for access to Plaintiff's file. The Commissioner does not respond to these assertions, contending only that this new evidence is not material.

Because Plaintiff was initially self-represented before the Appeals Council and was unsure of whether certain evidence had been submitted, *see Jones v. Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991) ("[*Pro se* plaintiff's] passive role in the proceeding indicates that she may not have understood the importance of obtaining specific evidence of the date of onset of her disability"), and because Plaintiff's new attorney was unable to access the ALJ record prior to the Appeal Council's decision, the court finds good cause

to supplement the record on appeal. The court therefore considers this new evidence in its review of the ALJ's determination.

## III. Application of the Five-Step, Sequential Framework.

An ALJ must follow a five-step, sequential framework to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted) (internal quotation marks omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

In this case, ALJ Cordovani concluded at Step One that Plaintiff had not engaged in substantial gainful activity since July 25, 2013, his alleged onset date. At Step Two, he determined that Plaintiff's small bowel resection, diverticulitis, and recurrent hernias with multiple laparoscopic repairs constituted severe impairments.

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Evaluating the effects of Plaintiff's surgeries on his intestinal tract in the context of Listing 5.06, which addresses obstruction of stenotic

areas in the small intestine or colon, the ALJ determined that this Listing was not met because "the record [did] not reveal any evidence of an inability to maintain adequate nutrition or loss of functioning of the stoma." (AR 42.)

At Step Four, the ALJ afforded weight ranging from little weight to significant weight to Dr. Eckhert's opinions. He granted significant weight to Dr. Schwab's consulting opinion. The ALJ determined that Plaintiff:

> has the [RFC] to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a) except he can occasionally stoop, but cannot crouch, crawl or squat. He also cannot climb ladders, ropes or scaffolds and cannot work at unprotected heights with two extra bathroom breaks per day of up to ten minutes duration each.

*Id.*

At Step Five, the ALJ determined that Plaintiff could not perform past relevant work as an auto mechanic but could make a successful adjustment to unskilled sedentary work, including the positions of document preparer, telephone quotation clerk, and final assembler, which the VE testified existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## IV. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for that of the Commissioner. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984). Even if the

court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision if it is supported by substantial evidence and if the proper legal principles have been applied. *See Stanley v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 382, 390 (N.D.N.Y. 2014) ("If supported by substantial evidence, the Commissioner's finding must be sustained even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].") (internal quotation marks omitted) (alteration in original).

**B.      Whether the ALJ Improperly Evaluated the Opinion of Treating Physician Dr. Eckhert.**

Plaintiff asserts that the ALJ committed reversible error by failing to accord all of Dr. Eckhert's opinions controlling weight. The Commissioner responds that Dr. Eckhert's opinions reflected only temporary restrictions.

Under the treating physician rule, the ALJ first must decide "whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). A treating physician's opinion regarding the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. "At both steps, the ALJ must give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Id.* at 96 (alterations in original) (internal quotation marks omitted).

> [I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "*Burgess* factors": (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

*Id.* at 95-96 (internal quotation marks omitted).

ALJ Cordovani gave Dr. Eckhert's October 14, 2013 opinion only "some weight" and "little weight" reasoning it was "vague" and "seemingly localized to [a] specific time period." (AR 46.) He gave Dr. Eckhert's November 2013 opinion following Plaintiff's discharge from the hospital "significant weight" because it was "intended to be temporary in nature" and "there was no indication of any subsequent degradation in the [Plaintiff's] abilities until at the earliest April 2016[.]" *Id.* The ALJ also gave "significant weight" to Dr. Eckhert's April 30, 2014 opinion because it was consistent with the medical record. *Id.* The ALJ assigned "little weight" to Dr. Eckhert's May 4, 2016 opinion that Plaintiff could lift and carry zero pounds, stand and/or walk for less than two hours per day, sit for two hours per day, and would need to lie down for four hours per day because it was "a reflection only of [Plaintiff's] current status with discovery of additional hernias and is not reflective of any long range disability moving forward as further treatment may ameliorate his symptoms in less than twelve consecutive months[.]" (AR 46-47.) ALJ Cordovani further noted that Plaintiff used over-the-counter pain medications to control his symptoms from January 2014 through March 2016.

In making the determination not to give Dr. Eckhert's opinions controlling weight, ALJ Cordovani was required to provide "good reasons" for doing so. The Second Circuit has held that the failure to provide good reasons for rejecting the opinion of a treating physician is grounds for remand. *See, e.g., Estrella*, 925 F.3d at 96 ("If the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment], we are unable to conclude that the error was harmless and consequently remand for the ALJ to comprehensively set forth [its] reasons.") (alterations in original) (internal quotation marks omitted); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) ("[B]ecause . . . the ALJ . . . failed to follow SSA regulations requiring a statement of valid reasons for not crediting the opinion of plaintiff's treating physician, . . . a remand is necessary in order to allow the ALJ to reweigh the evidence.").

Dr. Eckhert had an extensive treatment relationship with Plaintiff from 2012 to 2016 during which time he regularly examined Plaintiff, performed his hernia surgeries, recorded information about Plaintiff's condition and its impact on his daily activities, and

repeatedly concluded that Plaintiff was either unable to work or substantially limited in his ability to perform certain functions. As a surgeon who specializes in hernia repairs, his opinions regarding Plaintiff's condition are "about medical issues related to his or her area of specialty" and were supported by objective tests such as CT scans and physical examinations. 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). They were also consistent with his prescription for an abdominal brace, Dr. Schwab's opinions, and the findings of Dr. Lall that Plaintiff's abdomen was soft and tender, with specific tenderness noted in areas of scar tissue.

Correspondingly, ALJ Cordovani's rationale that Dr. Eckhert's opinion was not reflective of any long-range disability is unsupported and his hypothesis that "further treatment may ameliorate [Plaintiff's] symptoms" likewise has no support in the record. *See Glover v. Astrue*, 2010 WL 1035440, at *4 (W.D.N.Y. Mar. 18, 2010) (noting an ALJ may not make "inferences . . . not advanced in the medical record"). For example, although Dr. Eckhert renders some temporary disability opinions, as Plaintiff's condition progressed, Dr. Eckhert ceased clearing Plaintiff for a return to work. Neither he nor any other treating physician opined that further treatment would ameliorate Plaintiff's symptoms. To the contrary, it was not clear whether further surgery would be recommended.

In addition, the ALJ's reliance on Plaintiff's use of over-the-counter pain medications to demonstrate that Plaintiff's pain was manageable ignored Dr. Eckhert's prescription for Lortab to treat said pain. Plaintiff testified that he elected not to take these prescribed narcotics because they caused him gastrointestinal discomfort. Contrary to the ALJ's findings, Dr. Eckhert's prescribing Plaintiff narcotics to address his pain supports Dr. Eckhert's conclusion that said pain was significant enough to interfere with Plaintiff's ability to work.

Because ALJ Cordovani did not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion[,]" *Burgess*, 537 F.3d at 129, his "failure to

'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error[,]" *Estrella*, 925 F.3d at 96, and a remand for a determination of the good reasons, if any, for according Dr. Eckhert's opinions less than controlling weight is required.

### C. Whether the ALJ Erred in Evaluating Plaintiff's Subjective Complaints.

Plaintiff contends the ALJ should have given more weight to his subjective complaints because they were consistent with the record and because the ALJ determination includes assertions that are not supported by the record. Plaintiff further asserts that the ALJ failed to analyze Plaintiff's consistent and substantial earnings as an auto mechanic which Plaintiff contends buttresses his credibility.[3] *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). The Commissioner asserts that the ALJ properly discounted Plaintiff's subjective complaints because they were inconsistent with his self-reported activities.

The evaluation of a claimant's subjective symptoms involves a two-step process. First, the ALJ must determine whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other

---

[3] Plaintiff asserts that the ALJ's "credibility analysis is flawed." (Doc. 9-1 at 27.) In 2016, the Commissioner rescinded the Social Security Administration's policy interpretation ruling on "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements" and replaced it with a new ruling explaining that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). The standard for evaluating Plaintiff's symptoms, however, remains unchanged. *See Debra N. v. Comm'r of Soc. Sec.*, 2019 WL 1369358, at *7 n.9 (N.D.N.Y. Mar. 26, 2019) ("The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term 'credibility' is no longer used[.]").

evidence' of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (alteration in original) (quoting 20 C.F.R. § 404.1529(a)).

ALJ Cordovani stated Plaintiff "admitted that he was first prescribed the brace in March 2016" and that "[Plaintiff's] allegations regarding his function are not consistent with his activities as well." (AR 45.) Specifically, the ALJ noted that "airplane travel and traveling and moving luggage through airports and other modes of transportation[] is inconsistent with the extreme limitations alleged by the [Plaintiff]." *Id.* Plaintiff notes this characterization of his activities assumes without evidence that he carried his own luggage through the airport. A disability determination does not require a claimant to be homebound. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (internal quotation marks omitted).

In summarizing Plaintiff's regular activities, the ALJ found that Plaintiff "reported again that he was able to shop and would go twice a week to Walmart to get personal items or sometimes shopped with his wife[.]" (AR 40.) As Plaintiff points out, there is no evidence in the record regarding the frequency of his Walmart shopping. The ALJ made similar findings based upon whether Plaintiff drove or not, focusing on relatively trivial disagreements in the record.

As Plaintiff further points out, he had a long career as an auto mechanic and attempted to return to employment after each of his hernia surgeries until he was no longer able to do so. The ALJ properly found that Plaintiff could not return to his previous work. Against a backdrop of efforts to return to work, Plaintiff has a persuasive argument that the ALJ erred in assessing his subjective complaints. *See Singletary v. Sec'y of Health, Educ. & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) ("[A] life history of hard labor performed under demanding conditions over long hours . . . justifies the inference that when [the plaintiff] stopped working he did so for the reasons testified to."); *see also Genier*, 606 F.3d at 50 ("Because the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider all of the relevant

medical and other evidence and cannot stand.") (internal quotation marks and citation omitted); *see also Horan v. Astrue*, 350 F. App'x 483, 484-85 (2d Cir. 2009) ("[T]he inconsistency upon which the ALJ relied does not exist. Because the ALJ's credibility determination was based largely on these factual errors, we cannot say that it is supported by substantial evidence.").

Upon remand, the ALJ must reconsider Plaintiff's "testimony and . . . work attempts, in light of his reconsideration of the medical record and reweighing of the medical evidence." *Reddinger v. Saul*, 2019 WL 2511379, at *9 (D. Conn. June 18, 2019).

### D. Whether the ALJ's RFC Finding that Plaintiff Could Perform Sedentary Work is Supported by Substantial Evidence.

With regard to his RFC, Plaintiff contends the ALJ erred by relying on Dr. Schwab's assessment to support a finding that Plaintiff could perform sedentary work and further contends that the RFC is not supported by substantial evidence. Specifically, Plaintiff asserts that Dr. Schwab's opinion was "too vague to be reasonably interpreted as being consistent with a full range of sedentary work." (Doc. 9-1 at 21.) The Commissioner responds that the RFC is consistent with both Dr. Schwab's and Dr. Eckhert's opinions and was therefore supported by substantial evidence. The Commissioner also points out that the ALJ's decision provided sufficient analysis "to permit the Court to glean his rationale[.]" (Doc. 11-1 at 14.)

"A limitation is 'marked' if it interfere[s] seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Rowe v. Colvin*, 166 F. Supp. 3d 234, 240 n.10 (N.D.N.Y. 2016) (alterations in original) (internal quotation marks omitted).

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

> If an individual is unable to lift 10 pounds or occasionally lift and carry
> items like docket files, ledgers, and small tools throughout the workday, the
> unskilled sedentary occupation base will be eroded. The extent of erosion
> will depend on the extent of the limitations. For example, if it can be
> determined that the individual has an ability to lift or carry slightly less than
> 10 pounds, with no other limitations or restrictions in the ability to perform
> the requirements of sedentary work, the unskilled sedentary occupational
> base would not be significantly eroded; however, an inability to lift or
> carrying more than 1 or 2 pounds would erode the unskilled sedentary
> occupational base significantly. For individuals with limitations in lifting
> or carrying weights between these amounts, consultation with a vocational
> resource may be appropriate.

SSR 96-9P, 1996 WL 374185, at *6 (July 2, 1996).

In this case, Plaintiff's RFC includes a limitation for sedentary work, but does not specify whether Plaintiff has any other limitation for lifting or carrying. Dr. Eckhert's opinion stated that Plaintiff could lift or carry zero pounds. Similarly, Dr. Schwab's opinion, to which the ALJ gave significant weight, stated that Plaintiff "should avoid any activity that is strenuous[,]" but "strenuous" is not defined. (AR 404.) Dr. Schwab also opined that Plaintiff "has a marked restriction to bending, lifting, and carrying." *Id.* The ALJ's opinion does not explain if or how Plaintiff's marked limitation is incorporated into his RFC. *See Selian*, 708 F.3d at 416, 421 (finding that ALJ's reliance on treating physician's statement that plaintiff could "lift . . . objects of a mild degree of weight on an intermittent basis" was too vague to support ALJ's finding that plaintiff could perform "'light work' as defined in the Social Security regulations") (alteration in original); *see also Oney v. Colvin*, 2017 WL 1054914, at *3 (W.D.N.Y. Mar. 21, 2017) ("The Court notes that the administrative record contains ample evidence of medical impairments, and therefore the ALJ was not in a position to render a 'common sense' judgment regarding plaintiff's functional capacity without the benefit of an expert's assessment.").

As Dr. Schwab's limitations regarding Plaintiff's ability to perform strenuous activity, bend, lift, and carry are critical to Plaintiff's RFC, and as ALJ Cordovani accorded those restrictions significant weight but failed to reflect them in Plaintiff's RFC, his determination is not supported by substantial evidence. *See id.* ("[A]lthough the ALJ

stated he gave 'significant' weight to Dr. Schwab's opinion, the opinion did not actually support the RFC finding . . . it appears that the ALJ impermissibly relied on his own medical judgment in formulating the RFC."). On remand, the ALJ is directed to address this issue based upon the substantial evidence in the record.

### E.    Whether the Appeals Council Erred by Failing to Consider Additional Evidence from Dr. Eckhert.

Plaintiff notes that the additional records he submitted to the Appeals Council included two prescriptions for an abdominal binder which he asserts "directly contradict a factual conclusion made by the ALJ" (Doc. 9-1 at 13) that Plaintiff "admitted that he was first prescribed the brace in March 2016[,]" (AR 45), and that "[a]s of March 2, 2016, there is arguably an increase in limitations, but there is nothing in the record supporting a determination that any such new limitations would last at least twelve consecutive months." (AR 46.) Plaintiff contends he had been wearing an abdominal brace "[a]ll day" since July of 2013, (AR 70), and points out that the new medical evidence includes December 2011 and January 2013 prescriptions for an abdominal brace.

The Appeals Council will review a case if:

> (1) [t]here appears to be an abuse of discretion by the [ALJ]; (2) [t]here is an error of law; (3) [t]he action, findings or conclusions of the [ALJ] are not supported by substantial evidence; (4) [t]here is a broad policy or procedural issue that may affect the general public interest; or (5) [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a).

Plaintiff submitted to the Appeals Council a December 19, 2011 prescription completed by Nurse Practitioner Natalie Passmore for an abdominal binder and an undated prescription for an abdominal binder completed by Dr. Rajendran with a note that Plaintiff could return to work on February 11, 2013 so long as he wore the abdominal binder. The Appeals Council stated it was not considering this evidence because it was either duplicative of the evidence in the record before the ALJ or it did "not show a

reasonable probability that it would change the outcome of the decision" and was therefore not material. (AR 2.)

On appeal, the Commissioner asserts that the ALJ already had evidence which demonstrated that Plaintiff had been wearing the abdominal brace or binder since at least 2013.[4] The Appeals Council correctly noted that Plaintiff testified to his use of the abdominal binder; however, these other sources of prescriptions for an abdominal binder bolster Plaintiff's testimony and, more importantly, support Dr. Eckhert's assessment of Plaintiff's condition. This information is not duplicative because it corrects a factual error in the ALJ's decision and contradicts the Appeals Council's finding that the ALJ's decision was supported by substantial evidence. On remand, the ALJ must render a new decision considering this new evidence and its potential effect on his weighing of Plaintiff's subjective complaints and on the substantial evidence in the record.

### F. Whether New and Material Evidence Submitted to this Court Supports a Remand.

Plaintiff requests the court remand the case for the Commissioner to consider evidence first submitted on appeal to this court consisting of an August 16, 2016 treatment note from Dr. Eckhert and a February 24, 2014 letter from Dr. Eckhert to Dr. Lall, wherein Dr. Eckhert opines to a colleague[5] regarding Plaintiff's long-term prognosis:

> On examination, his abdomen is distended, but soft. There is no identifiable hernia.

> I feel his pain is secondary to the surgeries he has had. He is given a prescription for Lortab. He is following up with yourself. I also feel that the patient is unable to work at this time and may never be able to work secondary to his abdominal wall weakness and discomfort. The patient will follow up with me on a p.r.n. basis.

---

[4] The government also contends that the ALJ's reference to 2016 with regard to Plaintiff's brace was "obviously a typographical error." (Doc. 11-1 at 21.) As this is not clear from the determination, the court cannot accept this post hoc justification on appeal. *See Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 50 (2018) ("[W]e cannot accept the Commissioner's post hoc justification of the ALJ's decision on appeal.") (emphasis omitted).

[5] Arguably this evidence is entitled to substantial weight as Dr. Eckhert had no motive to exaggerate Plaintiff's prognosis when consulting with another specialist.

(Doc. 9-2 at 1.)

On August 16, 2016, Dr. Eckhert opined:

I had a long discussion with the patient and his wife regarding his situation.
The abdominal wall distention and laxity is secondary to the multiple
hernia operations. There [are] no more surgical options for this. The [right
upper quadrant] hernia is asymptomatic at this time. I do feel that the
patient is unable to do any heavy lifting and has trouble sitting for a long
period of time making work difficult for him.

(Doc. 9-2 at 4.)

In his decision the ALJ noted "[a]s of March 2, 2016, there is arguably an increase
in limitations, but there is nothing in the record supporting a determination that any such
new limitations would last at least twelve consecutive months." (AR 46.) Dr. Eckhert's
August 2016 opinions provide this alleged missing support for a finding that Plaintiff's
new limitations *would* last at least twelve consecutive months. The ALJ's determination
and RFC are therefore no longer supported by substantial evidence and a remand is
required. *See Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204-05 (E.D.N.Y. 2007)
("[W]hen . . . a diagnosis emerges after the close of administrative proceedings that sheds
considerable new light on the seriousness of [a claimant's] condition, evidence of that
diagnosis is material and justifies remand . . . . Therefore, the Court remands this case so
that the Commissioner may consider the post-hearing medical evidence.") (internal
quotation marks omitted).

## CONCLUSION

For the aforementioned reasons, the court GRANTS Plaintiff's motion for
judgment on the pleadings (Doc. 9) and DENIES the Commissioner's cross motion for
judgment on the pleadings. (Doc. 11.)

SO ORDERED.

Dated at Burlington, Vermont, this 4th day of September, 2019.

Christina Reiss, District Judge
United States District Court